Milo Steven Marsden (#4879)
Maryann Bauhs (#17196)
**DORSEY & WHITNEY LLP**
111 S. Main Street, Suite 2100
Salt Lake City, UT 84111
Telephone: (801) 933-7360
Facsimile: (801) 933-7373
marsden.steve@dorsey.com
bauhs.maryann@dorsey.com

Andrew Brantingham (Admitted Pro Hac Vice)
Michael Rowe (Admitted Pro Hac Vice)
Brock Huebner (Admitted Pro Hac Vice)
**DORSEY & WHITNEY LLP**
50 South 6th Street #1500
Minneapolis, MN 55402
Telephone: (612) 340-2600
Facsimile: (612) 340-2868
brantingham.andrew@dorsey.com
rowe.michael@dorsey.com
huebner.brock@dorsey.com

*Attorneys for Defendant Mayo Foundation
for Medical Education and Research*

---

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH, SOUTHERN DIVISION

---

| | |
|---|---|
| SHERRY TERESA, individually and on behalf of all others similarly situated,<br><br>     Plaintiff,<br><br>vs.<br><br>MAYO FOUNDATION FOR MEDICAL EDUCATION AND RESEARCH,<br><br>     Defendant. | **MOTION TO DISMISS FIRST AMENDED COMPLAINT UNDER RULES 12(B)(1) AND 12(B)(6)**<br><br>Civil No. 4:24-cv-00033-AMA-PK<br><br>Judge Ann Marie McIff Allen<br>Magistrate Judge Paul Kohler<br><br>ORAL ARGUMENT REQUESTED |

## TABLE OF CONTENTS

**Page**

RELIEF SOUGHT AND GROUNDS FOR MOTION ................................................................1

SUMMARY OF ALLEGATIONS IN THE FIRST AMENDED COMPLAINT..........................2

STANDARD............................................................................................................................3

ARGUMENT ..........................................................................................................................4

I.      NISNPIA Prohibits Class Action Claims, Depriving This Court of Subject Matter
Jurisdiction ..................................................................................................................4

         A.     The Plain Language of NISNPIA Bars Class Actions.............................................4

         B.     Rule 23 Does Not Preempt NISNPIA's Class Action Prohibition .........................5

                1.     Justice Stevens's two-step test ................................................................6

                2.     There is no direct collision with Rule 23 under Shady Grove Step
One.....................................................................................................6

                3.     Rule 23 modifies state-created substantive rights.......................................8

          C.     Plaintiff Cannot Assert a Class Action and the FAC Must Be Dismissed............11

II.     This Court Lacks Subject Matter Jurisdiction Because Plaintiff Failed to Meet
CAFA's Requirements ................................................................................................11

III.    Plaintiff Lacks Article III Standing Because She Has No Concrete Injury .....................15

         A.     Plaintiff Does Not Allege Injuries to Support Article III Standing .......................16

         B.     The "Statutory Privacy Rights" Created by NISNPIA Lack a Historical or
Common Law Analogue Necessary to Justify Article III Standing .....................18

                1.     The alleged failure to provide notice in violation of NISNPIA is
not "highly offensive to a reasonable person" ...........................................19

                2.     The alleged statutory violation did not involve public disclosure ............21

IV.    Plaintiff Failed to State a Claim Because Mayo Clinic is Not a "Commercial
Entity" Under NISNPIA ..........................................................................................23

CONCLUSION.....................................................................................................................25

# TABLE OF AUTHORITIES

**Cases**                                                                                  **Page(s)**

*Alvarado v. KOB-TV, L.L.C.,*
   493 F.3d 1210 (10th Cir. 2007) ........................................................................19

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009).........................................................................................4

*Baker v. USD 229 Blue Valley,*
   979 F.3d 866 (10th Cir. 2020) ......................................................................4, 15

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007).........................................................................................4

*Blood v. Labette Cty. Med. Ctr.,*
   2022 WL 11745549 (D. Kan. Oct. 20, 2022) .......................................................20

*Brigham Young Univ. v. Paulsen Constr. Co.,*
   744 P.2d 1370 (Utah 1987).............................................................................13

*Callegari v. Blendtec, Inc.,*
   2018 WL 5808805 (D. Utah Nov. 6, 2018) .......................................................7, 8

*Camoras v. Publishers Clearing House,*
   2024 WL 2262786 (D. Utah May 17, 2024).........................................................24

*In re Castletons, Inc.,*
   990 F.2d 551 (10th Cir. 1993) ........................................................................13

*Chapman v. GM LLC,*
   531 F. Supp. 3d 1257 (E.D. Mich. 2021)............................................................10

*Clapper v. Amnesty Int'l USA,*
   568 U.S. 398 (2013).......................................................................................18

*Cook v. GameStop, Inc.,*
   689 F. Supp. 3d 58 (W.D. Pa. 2023)...........................................................18, 21

*Curry v. Mrs. Fields Gifts,*
   2023 WL 6318108 (D. Utah Sept. 28, 2023)........................................................7

*Curry v. Mrs. Fields Gifts, Inc.,*
   No. 2:22-cv-651-JNP-DBP, Dkt. No. 54 .............................................................25

*Deevers v. Wing Fin. Servs., LLC,*
   2023 WL 6133181 (N.D. Okla. Sept. 19, 2023) ....................................................18

*Delgado v. Ocwen Loan Servicing, LLC*,
  2017 WL 5201079 (E.D.N.Y. Nov. 9, 2017) ........................................................10

*Firstenberg v. City of Santa Fe*,
  696 F.3d 1018 (10th Cir. 2012) .........................................................................11

*Friedman v. Dollar Thrifty Auto. Grp., Inc.*,
  2015 WL 8479746 (D. Colo. Dec. 10, 2015) ......................................................10

*Full Life Hospice, LLC v. Sebelius*,
  709 F.3d 1012 (10th Cir. 2013) ..........................................................................3

*Fullmer v. A-1 Collection Agency, LLC*,
  2022 WL 1538675 (D. Utah May 16, 2022) ......................................................6, 7

*Garman v. Campbell Cnty. Sch. Dist. No. 1*,
  630 F.3d 977 (10th Cir. 2010) .........................................................................5, 10

*Gonzales v. City of Castle Rock*,
  307 F.3d 1258 (10th Cir. 2002) .........................................................................20

*Grant v. Chevron Phillips Chem. Co. L.P.*,
  309 F.3d 864 (5th Cir. 2002) ..............................................................................12

*Hammond v. Stamps.com, Inc.*,
  844 F.3d 909 (10th Cir. 2016) ...........................................................................15

*Holt v. United States*,
  46 F.3d 1000 (10th Cir. 1995) .............................................................................4

*Hunstein v. Preferred Collection & Mgmt. Servs.*,
  48 F.4th 1236 (11th Cir. 2022) ...........................................................................22

*I.C. v. Zynga, Inc.*,
  600 F. Supp. 3d 1034 (N.D. Cal. 2022) ....................................................19, 21, 22

*Ibarra v. Manheim Invs., Inc.*,
  775 F.3d 1193 (9th Cir. 2015) ............................................................................14

*In re Illuminate Educ. Data Sec. Incident Litig.*,
  2023 WL 8888839 (C.D. Cal. Nov. 6, 2023) ......................................................20

*Johnson v. General Dynamics Info. Tech., Inc.*,
  675 F. Supp. 2d 236 (D.N.H. 2009) ...................................................................24

*Jones v. U.S. Child Support Recovery*,
  961 F. Supp. 1518 (D. Utah 1997) ................................................................21, 22

*Khalik v. United Air Lines*,
  671 F.3d 1188 (10th Cir. 2012) ............................................................25

*Kim v. McDonald's USA, LLC*,
  2022 WL 4482826 (N.D. Ill. Sept. 27, 2022) ..................................18, 21

*Laufer v. Looper*,
  22 F.4th 871 (10th Cir. 2022) ..............................................................16

*Legg v. Leaders Life Ins. Co.*,
  574 F. Supp. 3d 985 (W.D. Okla. 2021) ...............................................17

*Los Lobos Renewable Power, LLC v. AmeriCulture, Inc.*,
  885 F.3d 659 (10th Cir. 2018) ..............................................................11

*Lupia v. Medicredit, Inc.*,
  8 F.4th 1184 (10th Cir. 2021) ..............................................................22

*MacArthur v. San Juan County*,
  416 F. Supp. 2d 1098 (D. Utah 2005) ..................................................19

*Massie v. GM LLC*,
  2022 WL 534468 (D. Del. Feb. 17, 2022) ............................................22

*Matney v. Barrick Gold of N. Am., Inc.*,
  2022 WL 1186532 (D. Utah Apr. 21, 2022) .........................................23

*McCombs v. Delta Grp. Elecs., Inc.*,
  676 F. Supp. 3d 1064 (D.N.M. 2023) ..............................................17, 20

*McPhail v. Deere & Co.*,
  529 F.3d 947 (10th Cir. 2008) ..............................................................12

*Mitchell v. Wells Fargo Bank*,
  355 F. Supp. 3d 1136 (D. Utah 2018)...................................................17

*Murtagh v. Bed Bath & Beyond Inc.*,
  2020 WL 4195126 (D. Colo. July 3, 2020) ........................................8, 10

*Nabozny v. Optio Sols. LLC*,
  84 F.4th 731 (7th Cir. 2023) ................................................................22

*Phillips v. U.S. Customs & Border Prot.*,
  74 F.4th 986 (9th Cir. 2023) ................................................................21

*Pilgrim v. Universal Health Card, LLC*,
  2010 WL 1254849 (N.D. Ohio Mar. 25, 2010) ....................................11

*In re Practicefirst Data Breach Litig.*,
    2022 WL 354544 ...................................................................................................17

*Racher v. Westlake Nursing Home Ltd. P'ship*,
    871 F.3d 1152 (10th Cir. 2017) .........................................................8, 9, 10, 11

*Remick v. Utah*,
    2018 WL 1472484 (D. Utah Mar. 23, 2018) .........................................................19

*Ridge at Red Hawk, L.L.C. v. Schneider*,
    493 F.3d 1174 (10th Cir. 2007) ............................................................................4

*Saeedy v. Microsoft Corp.*,
    2023 WL 8828852 (W.D. Wash. Dec. 21, 2023) ...................................................20

*Salazar v. NBA*,
    2685 F. Supp. 3d 232 (S.D.N.Y. 2023).................................................................21

*Salcedo v. Hanna*,
    936 F.3d 1162 (11th Cir. 2019) .....................................................................17, 21

*Seale v. Peacock*,
    32 F.4th 1011 (10th Cir. 2022) ............................................................................21

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*,
    559 U.S. 393 (2010)...................................................................................... *passim*

*Shields v. Prof'l Bureau of Collections of Md., Inc.*,
    55 F.4th 823 (10th Cir. 2022) ...................................................................17, 18, 22

*Spokeo, Inc. v. Robins*,
    578 U.S. 330 (2016).......................................................................................15, 22

*Stepp v. Kennesaw Transp.*,
    2009 WL 10706914 (D.N.M. Oct. 26, 2009)........................................................12

*Stien v. Marriott Ownership Resorts*,
    944 P.2d 374 (Utah Ct. App. 1997) .....................................................................19

*Symbology Innovations, LLC v. Lego Sys.*,
    158 F. Supp. 3d 916 (E.D. Va. 2017) ...................................................................24

*Talbot v. Utah*,
    2020 WL 570287 (D. Utah Feb. 5, 2020) .............................................................19

*In re Target Corp. Data Sec. Breach Litig.*,
    66 F. Supp. 3d 1154 (D. Minn. 2014).................................................................10

*TransUnion LLC v. Ramirez,*
   141 S. Ct. 2190 (2021) ..................................................................15, 16, 18, 22

*Wadsworth v. Kross, Lieberman & Stone, Inc.,*
   12 F.4th 665 (7th Cir. 2021) ........................................................................16

*Whisenant v. Sheridan Prod. Co.,*
   627 F. App'x 706 (10th Cir. 2015) ..............................................................12

*World Peace Movement of Am. v. Newspaper Agency Corp.,*
   879 P.2d 253 (Utah 1994) ............................................................................12

## Statutes

28 U.S.C. § 1332 ...........................................................................1, 3, 11, 12

28 U.S.C. § 2071 ........................................................................................5

28 U.S.C. § 2072 ........................................................................................5

Utah Code § 13-37-101 *et seq.* ......................................................... *passim*

Utah Code § 16-10a-1501(1) ......................................................................25

Utah Code § 16-17-302(1) ..........................................................................24

Utah Code § 78B-2-302(2) ..........................................................................13

## Other Authorities

CSC Home Page, https://www.cscglobal.com/cscglobal/home (last visited July
   30, 2024) ....................................................................................................24

Fed. R. Civ. P. 8 ........................................................................................17

Fed. R. Civ. P. 12(b)(1) ..............................................................................1, 4

Fed. R. Civ. P. 12(b)(6) .......................................................................1, 2, 4, 23

Fed. R. Civ. P. 15(a)(1)(B) ..........................................................................3

Fed. R. Civ. P. 23 ......................................................................... *passim*

Fed. R. Civ. P. 56 ......................................................................................4

2003 Utah H.B. 40 1st Sub. (Buff) (Introduced Version), available at
   https://le.utah.gov/~2003/bills/hbillint/HB0040S1.pdf ..............................23

2003 Utah H.B. 40 (Enrolled Version), available at
    https://le.utah.gov/~2003/bills/hbillenr/HB0040.pdf ............................................................23

Utah State House of Rep. 2003 Gen. Session, Day 12, H.B. 0040S01 (Jan. 29,
    2003) at 57:50, available at
    https://le.utah.gov/av/floorArchive.jsp?markerID=12385 ......................................................20

## RELIEF SOUGHT AND GROUNDS FOR MOTION

Pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), Defendant Mayo Foundation for Medical Education and Research ("Mayo Clinic"), a leading non-profit provider of medical services, respectfully moves the Court to dismiss Plaintiff's First Amended Complaint ("FAC").

1.      Plaintiff, Sherry Teresa, claims Mayo Clinic violated Utah's Notice of Intent to Sell Nonpublic Personal Information Act ("NISNPIA"), Utah Code § 13-37-101 *et seq.*, and seeks to represent an absent class. But NISNPIA explicitly forbids class actions. *Id.* §13-37-203(3) ("A person may not bring a class action under this chapter."). Without the class action claim, Plaintiff has an individual cause of action for statutory damages of just $500, far short of the $75,000 amount in controversy required for diversity jurisdiction. 28 U.S.C. § 1332.

2.      Even if the Court were to find NISNPIA's class action bar does not apply in federal court, the Court still lacks subject matter jurisdiction, as the case does not meet the $5,000,000 amount in controversy required under the Class Action Fairness Act ("CAFA"). 28 U.S.C. § 1332(d). Conclusory allegations about "thousands" of potential violations of NISNPIA fail to meet Plaintiff's burden to establish federal court jurisdiction. Moreover, those allegations are contradicted by jurisdictional evidence demonstrating the total potential liability for all possible NISNPIA violations in the statute of limitations period was below $5,000,000.

3.      Plaintiff lacks Article III standing because she does not and cannot allege injury in fact. Plaintiff claims Mayo Clinic failed to provide adequate notice before disclosing her nonpublic personal information as required by NISNPIA, but she fails to allege how she, or any member of the putative class, suffered a concrete and particularized "injury in fact" from Mayo Clinic's alleged statutory violation, a baseline requirement for Article III standing.

4.      Finally, the FAC fails to state a claim under Rule 12(b)(6) because Plaintiff does not plausibly allege that Mayo Clinic is a "commercial entity" as defined by NISNPIA.

1

**SUMMARY OF ALLEGATIONS IN THE FIRST AMENDED COMPLAINT**[1]

Plaintiff, individually and on behalf of an absent class, claims Mayo Clinic engaged in "intentional, systematic, and unlawful disclosures" in violation of NISNPIA. FAC ¶ 4; *see* Utah Code § 13-37-101 *et seq.* Subject to various exceptions, NISNPIA prohibits a *commercial entity* from disclosing *nonpublic personal information* obtained during a *consumer transaction* unless the commercial entity has provided notice. Utah Code § 13-37-201.[2] Under NISNPIA, "public information" includes a person's name, telephone number, or street address. *Id.* § 13-37-102(6). "Nonpublic personal information," on the other hand, means "information that: (i) is not public information; and (ii) either alone or in conjunction with public information, identifies a person in distinction from other persons," including social security numbers, information related to credit worthiness, "purchasing patterns," or "personal preferences." *Id.* § 13-37-102(5).

If a commercial entity fails to comply with § 13-37-201, it "may not disclose nonpublic personal information . . . obtained on or after January 1, 2004." *Id.* § 13-37-202. NISNPIA allows "[a] person [to] bring an action against a commercial entity in a court of competent jurisdiction in this state" for its violation, and provides a statutory penalty of $500 plus "court costs" "for each time the commercial entity fails to provide the notice." *Id.* § 13-37-203. The statute bars class actions. *Id.* § 13-37-203(3).

Plaintiff alleges she "purchased one or more subscriptions to *Mayo Clinic Health Letter*" on or after January 1, 2004 and that Mayo Clinic, without adequate notice, disclosed her "Private Purchase Information to data aggregators, data appenders, and/or data cooperatives" and "rented, sold, exchanged, or otherwise disclosed for compensation lists containing Plaintiff's Private

---

[1] Under Rule 12(b)(6), the allegations are presumed true only for the purposes of this Motion.

[2] The italicized terms in this sentence are defined under NISNPIA. *See* Utah Code § 13-37-102.

Purchase Information to third parties." FAC ¶¶ 9, 11–12. Plaintiff defines the term "Private Purchase Information" to be "full names," "home addresses," (both public information under NISNPIA), and the "fact that they are purchasers of [Mayo Clinic]'s publications." *Id.* ¶ 5.

Plaintiff alleges this violated NISNPIA, *id.* ¶¶ 62–81, and seeks to represent "all persons in Utah who had their Private Purchase Information obtained by Mayo on or after January 1, 2004 as a result of a consumer transaction and who, at any point during the applicable statutory period, had such Private Purchase Information disclosed by Mayo to one or more third party." *Id.* ¶ 56. Plaintiff claims subject matter jurisdiction under CAFA, 28 U.S.C. § 1332(d). *Id.* ¶ 17. Plaintiff seeks: (1) to certify a class under Fed. R. Civ. P. 23, (2) a declaration Mayo Clinic violated NISNPIA, (3) $500 for Plaintiff and each purported class member, and (4) fees and interest. *Id.*, Prayer for Relief.

Plaintiff filed her original complaint on March 12, 2024, ECF 1, which Mayo Clinic moved to dismiss on four grounds. ECF 23. In lieu of responding to Mayo Clinic's motion, and after letting the 21-day period for amending as a right expire, Fed. R. Civ. P. 15(a)(1)(B), Plaintiff filed an unopposed motion to amend her complaint, which the Court granted. ECF 27. Plaintiff filed the FAC on July 15, 2024. ECF 28. The FAC amended only five of the pleading's eighty-one paragraphs,[3] and did not address at all, let alone refute, three of the four grounds in Mayo Clinic's previous motion to dismiss. *See* ECF 23 at 4–15, 23–25.

## STANDARD

The "jurisdiction of federal courts is limited" and "[a] court lacking jurisdiction cannot render judgment but must dismiss the cause at any stage of the proceedings in which it becomes apparent that jurisdiction is lacking." *Full Life Hospice, LLC v. Sebelius*, 709 F.3d 1012, 1016

---

[3] *Compare* ECF 1 ¶¶ 28, 52, 59, 75, *with* ECF 28 ¶¶ 28, 52, 59, 76, 77.

(10th Cir. 2013) (citation omitted). A Rule 12(b)(1) motion to dismiss "for lack of subject-matter jurisdiction," can be asserted as a facial or factual challenge. "A facial attack assumes the allegations in the complaint are true and argues they fail to establish jurisdiction. . . . A factual attack goes beyond . . . the complaint and adduces evidence to contest jurisdiction." *Baker v. USD 229 Blue Valley*, 979 F.3d 866, 872 (10th Cir. 2020). In reviewing a factual attack, a district court "has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1)" without "convert[ing] the motion to a Rule 56 motion." *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995).

Under Rule 12(b)(6), any cause of action that fails to state a claim upon which relief may be granted must be dismissed. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007). "[T]he complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (emphases in original). "[F]ormulaic recitation of the elements of a cause of action will not do." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).

## ARGUMENT

## I. NISNPIA PROHIBITS CLASS ACTION CLAIMS, DEPRIVING THIS COURT OF SUBJECT MATTER JURISDICTION

Plaintiff's sole cause of action is for violation of NISNPIA, asserting an individual claim and seeking to represent an absent class of "similarly situated" persons.

### A. The Plain Language of NISNPIA Bars Class Actions

NISNPIA's exclusive remedy is a $500 statutory penalty. Utah Code § 13-37-203(2)(a). A Utah "commercial entity" faces this penalty "each time the commercial entity fails to provide the notice required by this section. . . ." *Id.* In most cases, this means $500 in maximum potential liability. Class actions, in contrast, feature substantively different potential liability. Unlike a

$500 penalty sought by one plaintiff, class action liability poses an existential risk to Utah

businesses subject to NISNPIA, and provides a huge potential windfall to the plaintiff's lawyer.

NISNPIA unambiguously prohibits such class actions: "A person may not bring a class

action under this chapter." Utah Code § 13-37-203(3).

### B. Rule 23 Does Not Preempt NISNPIA's Class Action Prohibition

Plaintiff will argue that Rule 23 preempts NISNPIA's prohibition on class actions. Not

so. The Federal Rules of Civil Procedure are promulgated under the Rules Enabling Act, 28

U.S.C. § 2071 *et seq.* Section 2072(a) of that Act empowers the Supreme Court "to prescribe

general rules of practice and procedure" for U.S. District Courts, but Section 2072(b) clarifies

that "[s]uch rules shall not abridge, enlarge or modify any substantive right." If "application of a

federal rule . . . effectively abridges, enlarges, or modifies a state-created right or remedy," then

"federal courts cannot apply the rule." *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*,

559 U.S. 393, 422–23 (2010) (Stevens, J., concurring) (quoting 28 U.S.C. § 2072(b)).

*Shady Grove* governs any conflict between state substantive law and a federal rule of

civil procedure. But the opinion was deeply split, with a four-justice plurality opinion authored

by Justice Scalia, a four-justice dissent authored by Justice Ginsburg, and an opinion by Justice

Stevens "concurring in part and concurring in the judgment." *Id.* at 416. Justice Stevens's

opinion represents the holding of the case, and is controlling in the Tenth Circuit:

> When a fragmented Court decides a case and no single rationale explaining the
> result enjoys the assent of five Justices, the holding of the Court may be viewed as
> that position taken by those Members who concurred in the judgments on the
> narrowest grounds. *Consequently, we look to Justice Stevens' concurrence for
> guidance on this issue.*

*Garman v. Campbell Cnty. Sch. Dist. No. 1*, 630 F.3d 977, 983 n.6 (10th Cir. 2010) (emphasis

added) (citation omitted). This memorandum refers to Justice Stevens's opinion, unless noted.

### 1. Justice Stevens's two-step test

Justice Stevens's concurrence establishes that "there are some state procedural rules that federal courts must apply in diversity cases because *they function as a part of the State's definition of substantive rights and remedies*." *Shady Grove*, 559 U.S. at 416–17 (emphasis added). He explained that "[w]hen both a federal rule and a state law appear to govern a question before a federal court sitting in diversity, our precedents have set out a two-step framework for federal courts to negotiate this thorny area." *Id.* at 421. Under his two-step test, this Court first must determine whether the federal rule necessarily conflicts with the state law, "leaving no room for the operation of seemingly conflicting state law." *Id.* (cleaned up). That is, this Court must interpret Rule 23 "with some degree of sensitivity to important state interests and regulatory policies," and apply it to diversity cases "against the background of Congress' command that such rules not alter substantive rights" and "with consideration of the degree to which the Rule makes the character and result of the federal litigation stray from the course it would follow in state courts." *Id.* at 418–19 (cleaned up). When such a saving construction is not possible, the Court proceeds to step two, and must determine whether the federal rule "abridge[s], enlarge[s] or modif[ies] *any* [state] substantive right." *Id.* at 424 (citation omitted).

### 2. There is no direct collision with Rule 23 under Shady Grove *Step One*

*Shady Grove* requires courts to first "decide whether there is a direct collision between the federal rule and the state law." *Fullmer v. A-1 Collection Agency, LLC*, 2022 WL 1538675, at *2 (D. Utah May 16, 2022) (cleaned up). Where there is no collision and "the state and federal rules can exist side by side, each controlling its own intended sphere of coverage, there is no conflict," and courts can abandon *Shady Grove* in favor of the *Erie* doctrine to determine whether the state law is substantive or procedural. *Id.* (cleaned up).

Applying this command, other courts in this District have narrowly construed Rule 23 to find no conflict between Rule 23 and the class action bar in Utah's Consumer Sales Protection Act ("UCSPA"). For instance, in *Callegari v. Blendtec, Inc.*, the court read Rule 23 as permissive—that "a class action *may* be maintained" and determined that, because "Rule 23 does not explicitly set forth exclusive procedural requirements for maintaining a class action," and because courts are to "avoid collision where possible," Rule 23 and USPCA's class action bar were "not in direct conflict and may be enforced side by side." 2018 WL 5808805, at *4 (D. Utah Nov. 6, 2018) (emphasis added). Similarly, in *Fullmer*, the court held that "[u]nlike the statute analyzed in *Shady Grove*," UCSPA "does not bar all class actions" and instead "creates a cause of action for actual or statutory damages while simultaneously limiting the scope of that claim." 2022 WL 1538675, at *3. On this basis, the court held the UCSPA's class action bar was "capable of coexisting" with Rule 23, with "each controlling its intended sphere." *Id.*

In one case in this District, *Curry v. Mrs. Fields Gifts*, the court relied on Justice Scalia's plurality opinion statement that Rule 23 "create[s] a categorical entitlement to the class action form among litigants" to hold that Rule 23 necessarily conflicts with state laws barring class actions. 2023 WL 6318108, at *4 (D. Utah Sept. 28, 2023).[4] Mayo Clinic respectfully disagrees. Justice Stevens's framework, and its federalism concerns, rejected this categorical approach:

> [W]ere federal courts to ignore those portions of substantive state law that operate as procedural devices, it could in many instances limit the ways that sovereign

---

[4] The *Curry* court's reliance on Justice Scalia's plurality did not give adequate weight to Justice Stevens's controlling analysis. Justice Stevens agreed with the plurality's Step One conclusion that Rule 23 and the particular New York law at issue in *Shady Grove* conflicted. But Justice Stevens's comprehensive analysis of the general principles for future cases does not support the *Curry* court's conclusion that Justice Stevens endorsed Justice Scalia's view that Rule 23 provides "a categorical rule entitling a plaintiff . . . to pursue his claim as a class action." *Shady Grove*, 559 U.S. at 398 (Scalia, J.). Rather, Justice Stevens concurred in the judgment after finding the *specific* New York state law at issue was procedural given its facial applicability to *all* causes of actions of *all* types, both state and federal. *Id.* at 431–36 (Stevens, J.).

> States may define their rights and remedies. When a State chooses to use a traditionally procedural vehicle as a means of defining the scope of substantive rights or remedies, federal courts must recognize and respect that choice.

*Shady Grove*, 559 U.S. at 420. In other words, Justice Stevens's controlling opinion does not hold that *any and all* state statutes barring class actions necessarily conflict with Rule 23. Rather, it directs a more nuanced analysis of the specific terms of the statute at issue, with due attention to states' authority to define substantive rights. Applying such an analysis, there is no necessary conflict between Rule 23 and NISNPIA's class action bar—just as the courts concluded in *Callegari* and *Fullmer*.

Absent a conflict, the Court applies *Erie* principles, *Shady Grove*, 559 U.S. at 421, which require federal courts to "apply state substantive law and federal procedural law." *Racher v. Westlake Nursing Home Ltd. P'ship*, 871 F.3d 1152, 1162 (10th Cir. 2017). As discussed below,[5] NISNPIA's class action prohibition is substantive, so the Court must apply it here.

### 3. Rule 23 modifies state-created substantive rights

If the Court concludes that there is a "direct collision" between Rule 23 and NISNPIA's class action ban, it reaches Step Two and must determine if NISNPIA's class action ban is "so intertwined with a state right or remedy that it functions to define the scope of the state-created right," such that applying Rule 23 would violate the Rules Enabling Act. *Shady Grove*, 559 U.S. at 423. That is undoubtedly true here.

---

[5] The two steps in Justice Stevens's *Shady Grove* analysis, including reliance on *Erie* principles in Step One, "may well bleed back into" one another, as both steps require courts to act with "sensitivity to important state interests." *Shady Grove*, 559 U.S. at 422–23. No matter which analytical path the Court takes here, the result is the same: NISNPIA's class action prohibition is substantive, so Plaintiff's class action claim cannot proceed. *Compare e.g.*, *Callegari*, 2018 WL 5808805, at *4 (holding statutory class action ban substantive under *Erie*), *with Murtagh v. Bed Bath & Beyond Inc.*, 2020 WL 4195126, at *7–8 (D. Colo. July 3, 2020) (same for Colorado Consumer Protection Act class action ban under *Shady Grove* Step Two).

A federal rule cannot displace a conflicting state law where "the state law actually is part of a State's framework of substantive rights or remedies." *Id*. at 419. Justice Stevens explained:

> [E]ven if a federal rule in most cases "really regulates procedure," it does not "really regulate procedure" when it displaces those rare state rules that, although "procedural" in the ordinary sense of the term, *operate to define the rights and remedies available in a case*. This is so because what is procedural in one context may be substantive in another.

*Id.* at 428 n.13 (cleaned up) (emphasis added). "With Justice Stevens's admonitions in mind," a state law is substantive and governs in federal court if it will "significantly affect the result of a litigation" because "'it bears on a State-created right vitally' . . . or when it 'intimately affect[s] recovery or non-recovery.'" *Racher*, 871 F.3d at 1164 (quoting *Guaranty Trust Co. v. York*, 326 U.S. 99, 109–10 (1945)).

NISNPIA's class action bar is substantive under this test. In state court, one plaintiff may bring a NISNPIA case on her own behalf, with damages capped at $500 per violation plus court costs. Utah Code § 13-37-203(2). But, if brought in federal court, applying Rule 23 would allow the same case to present a multi-million dollar threat to Utah businesses and would permit thousands of plaintiffs' claims to be litigated in one proceeding without ever appearing before the Court and without individualized proof. NISNPIA's class action bar is obviously an integral part of the "state['s] interests and regulatory policies." *Shady Grove*, 559 U.S. at 418.

Unlike the New York state procedural law at issue in *Shady Grove*, which applied to all class actions raising claims under any state or federal law, NISNPIA's class action restriction applies only to claims brought under NISNPIA.[6] "[W]hen state law creates a cause of action, it

---

[6] *Compare Shady Grove*, 559 U.S. at 432 ("The text of CPLR § 901(b) expressly and unambiguously applies not only to claims based on New York law but also to claims based on federal law or the law of any other State"), *with* Utah Code § 13-37-203(3) ("A person may not bring a class action *under this chapter*.") (emphasis added).

also defines the scope of that cause of action." *Racher*, 871 F.3d at 1164. Numerous courts have concluded that class action bars embedded in statutes like NISNPIA are substantive and would be abridged by allowing class actions in federal court under Rule 23. In *Chapman v. GM LLC*, the court considered various states' class action bars in consumer protection statutes and found:

> [T]he bar on class actions in state consumer protection statutes . . . is *best understood as a substantive policy choice*: these states do not want consumer protection claims to be maintained as part of class actions. This was a choice made not simply because of procedural convenience, but for reasons relating to the substantive nature of class action lawsuits.

531 F. Supp. 3d 1257, 1301 (E.D. Mich. 2021) (emphasis added).[7]

Similarly, in *Murtagh*, the court considered a class action bar in the Colorado Consumer Protection Act ("CCPA"), and found that "applying Rule 23 to private CCPA claims would 'abridge, enlarge or modify' a state substantive right or remedy—something it may not do under the Rules Enabling Act." 2020 WL 4195126, at *7 (cleaned up). The court explained "CCPA's class action exclusion," like NISNPIA's, "is ingrained in the ver[y] text of the [CCPA] such that Rule 23 cannot trump it." *Id.*[8] "[A]llowing private class actions under the CCPA, where no such actions are contemplated . . . would logically 'enlarge or modify' the substantive rights or remedies conferred under the CCPA." *Id.*; *cf. Garman*, 630 F.3d at 985 (enforcing Wyoming state statutory pleading requirement that conflicted with federal procedural rule because

---

[7] *See also Friedman v. Dollar Thrifty Auto. Grp., Inc.*, 2015 WL 8479746, at *4 (D. Colo. Dec. 10, 2015) ("[M]ost courts that have evaluated state consumer-protection laws . . . have determined that Rule 23 cannot be applied to otherwise prohibited class actions, because the class-action prohibition defines the scope of the state-created right, namely the right to bring a lawsuit for violations of the state's consumer-protection law") (citation omitted); *In re Target Corp. Data Sec. Breach Litig.*, 66 F. Supp. 3d 1154, 1165 (D. Minn. 2014) (collecting cases).

[8] *See also Delgado v. Ocwen Loan Servicing, LLC*, 2017 WL 5201079, at *9 (E.D.N.Y. Nov. 9, 2017) (distinguishing between "pan-statutory class action bars" and "limitations built into particular state statutes," the latter of which "provide a procedure that is so bound up with the state-created right or remedy that it . . . displaces Rule 23" (cleaned up)).

"[p]ermitting the federal rules to trump substantive Wyoming law would 'abridge, enlarge, or modify' the litigants' rights in violation of the Rules Enabling Act." (cleaned up)).

As a federal court sitting in diversity, this Court "operate[s] as an independent system for administering justice to litigants who properly invoke its jurisdiction." *Shady Grove*, 559 U.S. at 417 (cleaned up). Justice will not be served if this case moves forward as a class action. By applying NISNPIA as its plain language dictates and granting Mayo Clinic's motion to dismiss, the Court will enforce the goal "to prevent both forum shopping and the inequitable administration of the laws." *Los Lobos Renewable Power, LLC v. AmeriCulture, Inc.*, 885 F.3d 659, 668 (10th Cir. 2018). Because the Utah legislature "create[d] a cause of action" under NISNPIA and simultaneously "define[d] the scope of that cause of action," including "the applicable burdens, defenses, and limitations," this Court must enforce NISNPIA's class action bar to avoid altering "substantive rights." *Racher*, 871 F.3d 1164–65.

### C.     Plaintiff Cannot Assert a Class Action and the FAC Must Be Dismissed

Because Plaintiff's sole cause of action arises under state law, she must invoke this Court's diversity jurisdiction. *See Firstenberg v. City of Santa Fe*, 696 F.3d 1018, 1025 (10th Cir. 2012). A federal district court may exercise jurisdiction in a diversity action only if "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs." 28 U.S.C. § 1332(a). Without her class action claim, all that remains is one plaintiff suing for $500. This Court has no jurisdiction over such claims. *Pilgrim v. Universal Health Card, LLC*, 2010 WL 1254849, at *5 (N.D. Ohio Mar. 25, 2010).

### II.     THIS COURT LACKS SUBJECT MATTER JURISDICTION BECAUSE PLAINTIFF FAILED TO MEET CAFA'S REQUIREMENTS

Even if this Court declines to enforce NISNPIA's class action bar, it still lacks subject matter jurisdiction because Plaintiff failed to meet her burden to demonstrate jurisdiction under

CAFA, which requires, among other factors, an amount in controversy that exceeds $5,000,000, exclusive of interest and costs. 28 U.S.C. § 1332(d)(2). Jurisdictional evidence demonstrates the FAC's allegations fall short of $5,000,000 as a matter of law.

To assert federal jurisdiction, Plaintiff must establish "jurisdictional facts" by a preponderance of the evidence. *McPhail v. Deere & Co.*, 529 F.3d 947, 954-55 (10th Cir. 2008). Unlike other situations where the amount in controversy may be impossible to define *ex ante*, the available damages under NISNPIA are statutorily limited to a $500 penalty for "each time the commercial entity fails to provide the notice required." Utah Code § 13-37-203(2)(a). Under the terms of NISNPIA, multiple disclosures of the same improperly obtained information do not impose additional $500 penalties. *Id.* Accordingly, to meet the $5,000,000 minimum, Plaintiff must allege Mayo Clinic committed at least 10,000 cognizable NISNPIA violations.[9]

To establish federal court jurisdiction, a party may not rely on "information and belief" claims "devoid of factual detail." *Stepp v. Kennesaw Transp.*, 2009 WL 10706914, at *3 (D.N.M. Oct. 26, 2009). That is exactly what Plaintiff attempts, offering a legal conclusion that "the aggregate amount in controversy exceeds $5,000,000." FAC ¶ 17. While apparently seeking to encompass all Utah persons with a cognizable NISNPIA claim against Mayo Clinic, FAC ¶ 56, the FAC offers no claims about class size beyond a conclusory allegation that "[o]n

---

[9] Prejudgment interest and attorneys' fees are not included for the amount in controversy. That NISNPIA allows for recovery of "court costs" does not permit Plaintiff to avoid CAFA's mandate that the jurisdictional amount be calculated "exclusive of interests and costs." 28 U.S.C. § 1332(d)(2); *see Whisenant v. Sheridan Prod. Co.*, 627 F. App'x 706, 709 (10th Cir. 2015). Further, attorneys' fees may be considered in the jurisdictional amount only if a "state statute allowing cost shifting expressly defines the allowable expenses of litigation to include attorney's fees." *Grant v. Chevron Phillips Chem. Co. L.P.*, 309 F.3d 864, 873–74 (5th Cir. 2002). NISNPIA's reference to "court costs" does not qualify as an express recognition that attorneys' fees are recoverable. *World Peace Movement of Am. v. Newspaper Agency Corp.*, 879 P.2d 253, 263–64 (Utah 1994) (Russon, J., dissenting) ("absent specific statutory language, we have not read the use of terms similar to expenses, such as 'costs,' to include an award of attorney fees.").

information and belief, members of the Class number in the thousands," *id.* at ¶ 57. Even if such conclusory allegations were sufficient to establish federal jurisdiction, they ignore that NISNPIA is subject to a one-year statute of limitations by virtue of its $500 statutory penalty. Utah Code § 78B-2-302(2).[10] Only claims that accrued between March 12, 2023 and March 12, 2024—the date this lawsuit was filed—are cognizable under NISNPIA and thus relevant for determining subject matter jurisdiction. As such, the key issue is when a NISNPIA claim "accrues."

In Utah, a claim "accrues upon 'the happening of the last event necessary to . . . the cause of action.'" *Brigham Young Univ. v. Paulsen Constr. Co.*, 744 P.2d 1370, 1373 (Utah 1987) (citation omitted). Here, a NISNPIA claim requires three pre-requisites: "(a) the commercial entity enters into a consumer transaction with [a] person; (b) as a result of the consumer transaction . . . the commercial entity obtains nonpublic personal information concerning that person; and (c) the commercial entity violates this chapter." Utah Code § 13-37-203. This final requirement—the violation—itself includes two requirements: (1) a commercial entity fails to comply with the notice procedures mandated by the statute, and (2) the commercial entity "disclose[s]" the information obtained without proper notice. *Id.* § 13-37-201. Accordingly, a NISNPIA claim accrues at the later of either the time nonpublic information is obtained without proper notice (after January 1, 2004), or the time that information is disclosed. Under either interpretation, the FAC falls well short of alleging $5,000,000 in controversy.

The FAC offers only conclusory allegations about the number of "consumer transactions," claiming there are "thousands," FAC ¶ 28, between January 1, 2004 and the

---

[10] NISNPIA's $500 liability provision represents a state-imposed punitive measure—as opposed to compensation for actual damages—which, under Tenth Circuit precedent, represents a statutory "penalty." *In re Castletons, Inc.*, 990 F.2d 551, 557–58 (10th Cir. 1993) (defining a "penalty" as "a sum of money which the law exacts the payment of by way of punishment for doing some act which is prohibited, or omitting to do some act which is required to be done").

present. *Id.* ¶ 56. Mayo Clinic's evidence,[11] however, demonstrates there were a maximum of 4,173 "consumer transactions" between March 12, 2023 and March 12, 2024. Exhibit 1, Declaration of David Wilson ¶¶ 5–6. This data includes all Utah-based *Health Letter* subscribers and any other customer who purchased a Mayo Clinic publication during the one-year period. *Id.*[12] This data almost certainly overstates Mayo Clinic's potential exposure. For example, the same customer may have placed both a subscription and product order in the same transaction. If NISNPIA claims accrue on the failure to provide notice, and assuming (solely for the purposes of this Motion) *every* "consumer transaction" during the relevant period violated NISNPIA, the maximum potential liability is $2,086,500, well short of CAFA's $5,000,000 minimum.

The same is true if an NISNPIA claim accrues when nonpublic information obtained without notice is disclosed. The FAC does not offer any allegations, conclusory or otherwise, about the frequency and scope of disclosures that occurred in the limitations period. But Mayo Clinic's evidence demonstrates the maximum potential liability for disclosures within the limitations period is well below $5,000,000. Mayo Clinic, through its third-party vendor, completed rental transactions involving 7,633 Utah-based purchasers or subscribers of Mayo Clinic publications between March 12, 2023 and March 12, 2024. Exhibit 2, Declaration of Frank Castellvi ¶¶ 7–8. Assuming solely for the purposes of this Motion that these disclosures involved a Utah-based person's "nonpublic personal information," and assuming that information was obtained by Mayo Clinic without notice, the maximum potential liability is

---

[11] "CAFA's requirements are to be tested by consideration of real evidence and the reality of what is at stake in the litigation, using reasonable assumptions underlying the defendant's theory of damages exposure." *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1198 (9th Cir. 2015).

[12] The FAC alleges the "consumer transactions" at issue involved "Mayo's sales of tangible and/or intangible property to Plaintiff, including subscriptions to its *Mayo Clinic Health Letter* magazine." FAC ¶ 65.

$3,816,500. The evidence adduced by Mayo Clinic demonstrates it is "legally impossible" for Plaintiff to recover the jurisdictional minimum. *Hammond v. Stamps.com, Inc.*, 844 F.3d 909, 914 (10th Cir. 2016). The Court accordingly must dismiss Plaintiff's FAC.

## III. PLAINTIFF LACKS ARTICLE III STANDING BECAUSE SHE HAS NO CONCRETE INJURY

To invoke this Court's jurisdiction, Plaintiff must demonstrate standing by showing she "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). In class actions, "[e]very class member must have Article III standing in order to recover individual damages." *TransUnion LLC v. Ramirez,* 141 S. Ct. 2190, 2208 (2021). "Where, as here, a case is at the pleading stage, the plaintiff must 'clearly . . . allege facts demonstrating' each element." *Spokeo*, 578 U.S. at 338 (citation omitted). The "first and foremost" element of standing—injury in fact—requires that there be "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Id.* at 338–39. "Article III standing requires a concrete injury even in the context of a statutory violation." *Id.* at 341.

Tangible harms like physical or monetary damages are concrete injuries, but intangible harms confer standing only if "the alleged injury to the plaintiff has a 'close relationship' to a harm 'traditionally' recognized as providing a basis for a lawsuit in American courts." *TransUnion*, 141 S. Ct. at 2204 (quoting *Spokeo*, 578 U.S. at 341). Plaintiff must identify a "close historical or common-law analogue for [her] asserted injury. . . ." *Id.* "The party invoking federal jurisdiction bears the burden of establishing standing." *Baker*, 979 F.3d at 871 (citation omitted). Plaintiff fails to meet her burden.

### A.      Plaintiff Does Not Allege Injuries to Support Article III Standing

The FAC's sole cause of action is an alleged violation of statutorily protected privacy rights "afforded by the NISNPIA." FAC ¶¶ 7, 59, 80. But the Supreme Court has "rejected the proposition that 'a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right.'" *TransUnion*, 141 S. Ct. at 2205 (citation omitted). Because a legislature "may not simply enact an injury into existence . . . to transform something that is not remotely harmful into something that is," *id.* at 2205, federal court jurisdiction is available only where a plaintiff alleges (and later establishes) tangible or intangible harms resulting from the statutory violations.

Plaintiff does not allege any tangible harm related to that statutory violation, such as physical injury or money damages. Instead, the FAC seeks only the statutory $500 penalty and fees. *See* FAC ¶ 81. Even if the FAC is generously read to suggest additional harms beyond statutory privacy rights, Plaintiff still lacks Article III standing.

NISNPIA requires Utah commercial entities to provide notice before collecting nonpublic personal information that is subsequently disclosed. Utah Code § 13-37-201. Plaintiff alleges Mayo Clinic failed to provide such notice prior to the sale of what she terms her "Private Purchase Information." FAC ¶¶ 3, 11, 75. Yet, an "asserted informational injury that causes no adverse effects cannot satisfy Article III." *TransUnion*, 141 S. Ct. at 2214; *see also, e.g.*, *Wadsworth v. Kross, Lieberman & Stone, Inc.*, 12 F.4th 665, 668 (7th Cir. 2021) (rejecting claim that failure to provide notice created Article III injury). To satisfy Article III standing based on an informational injury, Plaintiff must allege "downstream consequences" from the lack of notice. *Laufer v. Looper*, 22 F.4th 871, 880–81 (10th Cir. 2022).

The closest the FAC comes to alleging a "downstream consequence," or any real-world effect on Plaintiff, is a conclusory allegation that "Plaintiff has received a barrage of unwanted

junk mail." FAC ¶ 1. Initially, this single allegation lacks "specific facts," and is instead a

"conclusory statement[] that the court must disregard." *Mitchell v. Wells Fargo Bank*, 355 F.

Supp. 3d 1136, 1151 (D. Utah 2018). Plaintiff provides no allegations to link the alleged

NISNPIA violation with the claimed increase in junk mail, and this Court should "not infer,

without some supportive allegations, a causal link." *McCombs v. Delta Grp. Elecs., Inc.*, 676 F.

Supp. 3d 1064, 1074 (D.N.M. 2023); *see also Legg v. Leaders Life Ins. Co.*, 574 F. Supp. 3d

985, 993 (W.D. Okla. 2021) (allegations of "dramatic increase in the amount and frequency of

phishing emails" fell short of Rule 8 pleading standard).

Even accepting the junk mail allegation, "annoy[ance] or "wasted time" for no "more

than a few seconds" is "not a basis for invoking the jurisdiction of the federal courts." *Salcedo v.

Hanna*, 936 F.3d 1162, 1172–73 (11th Cir. 2019). Courts routinely conclude that analogous

allegations of harm caused by unsolicited communications resulting from data breaches or

disclosures are insufficient to establish Article III standing. *See, e.g.*, *Shields v. Prof'l Bureau of

Collections of Md., Inc.*, 55 F.4th 823, 826, 829–30 (10th Cir. 2022) (concluding three unwanted,

misleading collection letters did not constitute a tangible harm or an invasion of a privacy right);

*McCombs*, 676 F. Supp. 3d at 1074 ("[A] number of courts have declined to confer standing

when considering an increase in spam communications."); *In re Practicefirst Data Breach Litig.*,

2022 WL 354544, at *5 n.8 (rejecting injury based on allegation of "unsolicited spam").

The FAC also vaguely alleges future harms from NISNPIA violations based on the risk

that the disclosed information may be used to "lure unsuspecting consumers into various scams."

FAC ¶ 37; *see also id.* ¶¶ 6, 38, 39, 52 (similar).[13] Yet, the Supreme Court has repeatedly

---

[13] As with other FAC allegations, this claim also suffers from traceability issues: such harm
would be caused by unnamed and yet unknown actors, not Mayo Clinic. As the FAC concedes,
NISNPIA violations are allegedly "widespread . . . in consumer-products industries." FAC ¶ 40.

affirmed that "the risk of future harm on its own does not support Article III standing for the plaintiffs' damages claim." *TransUnion*, 141 S. Ct. at 2213; *see also Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 416 (2013) (rejecting standing based on speculative future harm). Plaintiff does not allege she was the victim of the unspecified "scams," nor that any such scams are imminent, precluding Article III standing on that basis. *E.g.*, *Deevers v. Wing Fin. Servs., LLC*, 2023 WL 6133181, at *5 (N.D. Okla. Sept. 19, 2023). The lack of imminent future harm is particularly true given the non-sensitive information allegedly disclosed. *E.g.*, *Kim v. McDonald's USA, LLC*, 2022 WL 4482826, at *5 (N.D. Ill. Sept. 27, 2022) (collecting cases).

**B.    The "Statutory Privacy Rights" Created by NISNPIA Lack a Historical or Common Law Analogue Necessary to Justify Article III Standing**

Though a legislature may "elevate" injuries to "the status of legally cognizable injuries" by statute, those harms must have "exist[ed] in the real world" previously to confer standing. *TransUnion*, 141 S. Ct. at 2205. The specific concern addressed by NISNPIA and alleged in this lawsuit—the right to *notice*—has no "close historical or common law analogue." *Id.* at 2204. Plaintiff may not rely on a generalized reference to a right to privacy, but must instead "allege a similar harm" to a common law cause of action. *Shields*, 55 F.4th at 828–29; *see also Cook v. GameStop, Inc.*, 689 F. Supp. 3d 58, 63–65 (W.D. Pa. 2023) (rejecting attempted reliance on "the age-old common law prohibitions and protections from and against invasion of privacy").

The few amendments Plaintiff made to her pleadings in response to Mayo's previous motion to dismiss do not rectify her lack of Article III injury. Likely in response to an aside in *TransUnion* noting that analogies to privacy-related torts like disclosure of private information and intrusion upon seclusion may in some cases support Article III standing, 141 S. Ct. at 2204, the FAC added three formulaic references to those torts. FAC ¶¶ 52, 59, 77. "Conclusory allegations" and "legal conclusions and opinions . . . couched as facts" are insufficient to avoid

dismissal. *Remick v. Utah*, 2018 WL 1472484, at *6 (D. Utah Mar. 23, 2018). The attempt to re-label the alleged NISNPIA violations using terms associated with common law torts ignores that the alleged harms lack elements required by Utah courts for either tort.[14]

> 1.   The alleged failure to provide notice in violation of NISNPIA is not "highly offensive to a reasonable person"

To be legally cognizable, any alleged invasion of privacy must be "highly offensive to a reasonable person." *Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1217 (10th Cir. 2007) (quoting Restatement (Second) of Torts § 652B & cmts. b and d); *see also I.C. v. Zynga, Inc.*, 600 F. Supp. 3d 1034, 1049 (N.D. Cal. 2022) ("[T]he harm is caused by the disclosure of or intrusion upon matters of a kind that would be 'highly offensive to a reasonable person.'") (internal quotation marks omitted)). Notwithstanding the added "legal conclusions," which "enjoy no . . . deference," *Talbot v. Utah*, 2020 WL 570287, at *2 & n.15 (D. Utah Feb. 5, 2020), the FAC's factual allegations do not allege this element.

NISNPIA does not prohibit the disclosure of information. Rather, it is concerned with the failure to provide *notice* prior to the collection of nonpublic personal information that is subsequently disclosed; if a Utah commercial entity provides the requisite notice, it may disclose the information without limitation. Utah Code §§ 13-37-201–203. The focus on mandating notice

---

[14] *See, e.g.*, *Stien v. Marriott Ownership Resorts*, 944 P.2d 374, 378 (Utah Ct. App. 1997) (citing § 652B of the Restatement and declaring that an intrusion upon seclusion claim requires "(1) that there was 'an intentional substantial intrusion, physically or otherwise, upon the solitude or seclusion of the complaining party,' and (2) that the intrusion 'would be highly offensive to the reasonable person'" (citation omitted)); *MacArthur v. San Juan County*, 416 F. Supp. 2d 1098, 1192 n.109 (D. Utah 2005) (declaring that a public disclosure of embarrassing private facts claim has three elements: "(1) the disclosure of the private facts must be a public disclosure and not a private one; (2) the facts disclosed to the public must be private facts, and not public ones; [and] (3) the matter made public must be one that would be highly offensive and objectionable to a reasonable person of ordinary sensibilities").

rather than prohibiting disclosures was apparent in the legislative history for NISNPIA,[15] as the sponsor of the bill, Representative Aagard, stated that his bill is "not prohibiting the business of selling this information. It's strictly notice. If they want to sell it, they can sell it, that's fine."[16] As noted, the informational harm from lack of notice is insufficient to establish Article III injury.

Even if the Court focuses on the *disclosure* of the information after the lack of notice, common law analogues are unavailing. In considering allegations of unlawful collection and/or disclosure of personal information, courts consider the nature of the information at issue to decide whether an analogy to a common law privacy tort is appropriate to confer standing. *See Saeedy v. Microsoft Corp.*, 2023 WL 8828852, at *4 (W.D. Wash. Dec. 21, 2023) ("The nature of the information that is allegedly intercepted must be private."). In this case, the "Private Purchase Information" that Mayo Clinic allegedly disclosed constitutes Plaintiff's name, home address, and the fact she purchased a Mayo Clinic publication.[17] As NISNPIA itself recognizes, Plaintiff's name and home address are "public information." Utah Code § 13-37-102(6). Accepting the dubious claim that inclusion of the fact that Plaintiff purchased a Mayo Clinic

---

[15] The Court may take judicial notice of legislative history on a motion to dismiss. *See Gonzales v. City of Castle Rock*, 307 F.3d 1258, 1266 n.2 (10th Cir. 2002).

[16] Utah State House of Rep. 2003 Gen. Session, Day 12, H.B. 0040S01 (Jan. 29, 2003) at 57:50, available at https://le.utah.gov/av/floorArchive.jsp?markerID=12385 ("Legislative History"); *see also id.* at 49:30 ("[T]his bill just requires a commercial entity, if they're going to sell . . . that they provide notice to the consumer that they're going to intend to do that.").

[17] The FAC also alleges the "Private Purchase Information" is "supplement[ed]" by third party "data aggregators and appenders" with Plaintiff's gender. FAC ¶ 48. This allegation lacks causation and redressability absent any claim that *Mayo Clinic* collects or discloses gender information. *See McCombs*, 676 F. Supp. 3d at 1074 (rejecting Article III standing in part for plaintiffs' failure to make specific allegations that harm was traceable to defendant); *Blood v. Labette Cty. Med. Ctr.*, 2022 WL 11745549, at *6 (D. Kan. Oct. 20, 2022) (same). Even if gender were considered part of the nonpublic personal information protected under NISNPIA, disclosure of basic demographic information does not create Article III standing. *See, e.g., In re Illuminate Educ. Data Sec. Incident Litig.*, 2023 WL 8888839, at *2–3 (C.D. Cal. Nov. 6, 2023).

publication transforms this into "nonpublic personal information" under NISNPIA, disclosure of

that information falls far short of being "highly offensive to a reasonable person." "Product

preference information" does not give rise to a reasonable expectation of privacy because it is

"no different from what [a seller's] employees would have been able to observe if [plaintiff] had

gone into a brick-and mortar store and began browsing." *Cook*, 689 F. Supp. 3d at 66.

Accordingly, courts have rejected similar attempts to analogize to common law privacy

torts, even where the information at issue included personal details beyond those alleged here.

*E.g., Phillips v. U.S. Customs & Border Prot.*, 74 F.4th 986, 995–96 (9th Cir. 2023) ("names,

birthdays, social security numbers, occupations, addresses, social media profiles, and political

views and associations"); *Kim,* 2022 WL 4482826, at *7 (email addresses, phone numbers, and

delivery addresses); *I.C.*, 600 F. Supp. 3d at 1049 ("email addresses, phone numbers, Zynga

usernames, Zynga passwords, and Facebook usernames").[18] This Court should do the same.

### 2. *The alleged statutory violation did not involve public disclosure*

Under the Restatement, "[m]ost of the accepted torts generally known as 'invasion of

privacy' involve privacy in the rather specific sense of one's right to be free from unwanted

publicity." *Salcedo*, 936 F.3d at 1171 n.10. And "'[p]ublicity,' . . . requires that the information

disclosed has or is substantially likely to become general knowledge to the public at large."

*Jones v. U.S. Child Support Recovery*, 961 F. Supp. 1518, 1520 (D. Utah 1997). Plaintiff does

not allege her "Private Purchase Information" was publicly disclosed, rather that it was provided

to "data aggregators, data appenders, data cooperatives," and others. FAC ¶ 1. The Tenth Circuit

---

[18] Unlike cases where the alleged process for collecting the information was itself highly
offensive to a reasonable person, *e.g.*, *Seale v. Peacock*, 32 F.4th 1011, 1021 (10th Cir. 2022)
("unauthorized intrusion" into personal account); *Salazar v. NBA*, 2685 F. Supp. 3d 232, 241
(S.D.N.Y. 2023) (secretive tracking across websites), the FAC alleges the "Private Purchase
Information" was openly collected during a routine subscription process. FAC ¶ 75.

rejected Article III standing for a Fair Debt Collection Practices Act violation involving disclosure to third parties, given the lack of a "close relationship" to the tort of public disclosure absent a "*public* disclosure of private facts." *Shields*, 55 F.4th at 829;[19] *see also Nabozny v. Optio Sols. LLC*, 84 F.4th 731, 735–36 (7th Cir. 2023) (similar); *Hunstein v. Preferred Collection & Mgmt. Servs.*, 48 F.4th 1236, 1242 (11th Cir. 2022) (en banc) (similar).[20]

As *TransUnion* made clear, analogies to common law causes of action are "not an open-ended invitation for federal courts to loosen Article III based on contemporary, evolving beliefs about what kinds of suits should be heard in federal courts." 141 S. Ct. at 2204. Yet that is exactly what any analogies to these common law torts would require. *E.g.*, *I.C.*, 600 F. Supp. 3d at 1049–50 ("[T]he Court finds an insufficient fit between the loss of information alleged here and the common law privacy torts of [public] disclosure of private facts and intrusion upon seclusion"); *Massie v. GM LLC*, 2022 WL 534468, at *3–5 (D. Del. Feb. 17, 2022) (similar). The right to privacy, alone, cannot create standing for Plaintiff.

The FAC's bare NISNPIA "procedural violation, divorced from any concrete harm" cannot "satisfy the injury-in-fact requirement of Article III." *Spokeo*, 578 U.S. at 341.

---

[19] Before *Shields*, the Tenth Circuit decided an FDCPA case and determined that a plaintiff demonstrated Article III standing because the unwanted phone call was analogous to the intrusion-upon-seclusion tort. *Lupia v. Medicredit, Inc.*, 8 F.4th 1184, 1192–93 (10th Cir. 2021). That case is distinguishable. Unlike in *Lupia* where the FDCPA violation itself caused the alleged intrusion upon seclusion, NISNPIA is violated by the lack of notice, a harm which has no immediate, direct effect on a consumer. Indeed, Plaintiff failed to allege any non-conclusory violation of her privacy. Further, *Lupia* focused on the defendant's failure to comply with the plaintiff's explicit request to cease communications, which is not at issue here. *Id.* at 1190.

[20] The screenshot of a NextMark webpage, FAC ¶ 2 & Ex. A, fails to justify Article III standing. Not only is there no allegation that Mayo Clinic provided NextMark the "Private Purchase Information" it purports to sell (or that Plaintiff's information is even included in the information alleged to be for sale), but the NextMark data card itself does not publicize the information, it merely advertises the data's potential availability. *See Jones*, 961 F. Supp. at 1521 ("This distribution of private information to a handful of people is insufficient to meet the element of publicity required for this tort.").

## IV.   PLAINTIFF FAILED TO STATE A CLAIM BECAUSE MAYO CLINIC IS NOT A "COMMERCIAL ENTITY" UNDER NISNPIA

Even if the Court were to determine it has jurisdiction, it still must dismiss this suit under Rule 12(b)(6) because Mayo Clinic has no "office or other place of business" in Utah.[21] NISNPIA applies only to a "commercial entity," which the statute defines as "a person that: (i) has an office or other place of business located in [Utah]; and (ii) in the ordinary course of business transacts a consumer transaction in" Utah. Utah Code §§ 13-37-102(2)(a), 13-37-203(1). The legislative history of NISNPIA reinforces that the law is limited to Utah-based companies. In a floor debate, in response to a question about whether the law could apply to national companies, NISNPIA's sponsor stated it "would pertain to companies domiciled in the state of Utah." Legislative History at 1:04:20. Further, the legislature specifically amended the original bill to add the independent requirement that a "commercial entity" have "an office or other place of business located in [Utah]" in addition to transacting business in Utah.[22]

Mayo Clinic does not have an office or other place of business in Utah, nor has the FAC alleged facts to establish this necessary element. Rather, Plaintiff alleges Mayo Clinic "is a Minnesota corporation that maintains its headquarters and principal place of business in Rochester, Minnesota." FAC ¶ 13. Plaintiff then alleges:

---

[21] A Rule 12(b)(6) dismissal should be with prejudice as Plaintiff "already had one opportunity to amend [her] original complaint (following Defendant['s] first motion to dismiss) . . ." *Matney v. Barrick Gold of N. Am., Inc.*, 2022 WL 1186532, at *14 (D. Utah Apr. 21, 2022), *aff'd* 80 F.4th 1136 (10th Cir. 2023).

[22] *Compare* 2003 Utah H.B. 40 1st Sub. (Buff) (Introduced Version), available at https://le.utah.gov/~2003/bills/hbillint/HB0040S1.pdf ("'[C]ommercial entity' means a person that in the ordinary course of business transacts a consumer transaction in this state."), *with* 2003 Utah H.B. 40 (Enrolled Version), available at https://le.utah.gov/~2003/bills/hbillenr/HB0040.pdf ("'[C]ommercial entity' means a person that: (i) has an office or other place of business located in the state; and (ii) in the ordinary course of business transacts a consumer transaction in this state.").

> Mayo has one or more office(s) or other place(s) of business in Utah, including but not limited to at 15 West South Temple, Suite 600, Salt Lake City, Utah (a location overseen by Mayo's registered agent on Mayo's behalf). Additionally, Mayo has employees who work for Mayo from Utah (and thus conduct business on Mayo's behalf at places in Utah).

*Id.* ¶ 14. The FAC continues, "Mayo entered into one or more 'consumer transaction[s]'" when Plaintiff purchased one or more subscriptions to the *Mayo Clinic Health Letter*, sales allegedly "initiated or completed in Utah, where Plaintiff resided at the time she purchased her subscriptions and where she received her subscriptions in the mail." *Id.* ¶ 65. These allegations do not establish Mayo Clinic is a "commercial entity" within the meaning of NISNPIA.

First, the "office" or "place of business" Plaintiff identifies is that of Corporation Service Company ("CSC"), a company that offers, among other things, registered agent services.[23] NISNPIA's definition of "commercial entity" is unambiguous and makes no mention of registered agents as a substitute for maintaining an "office or other place of business located in the state." The office of a commercial registered agent is not the same as an actual office or place of business where Mayo Clinic transacts with consumers in Utah. *See* Utah Code § 16-17-302(1) (a registered agent's duties are merely to forward "any process, notice, or demand" to the entity). Courts have overwhelmingly rejected Plaintiff's sweeping definition of place of business, including in a recent decision interpreting NISNPIA. *See Camoras v. Publishers Clearing House*, 2024 WL 2262786, at *2 (D. Utah May 17, 2024) (denying motion for leave to amend putative NISNPIA class action complaint because allegation that "Defendant has at least one office or other place of business in Utah" was "contradict[ed]" by state registration listing only "Defendant's registered agent, not Defendant, [with] a location in Utah").[24]

---

[23] CSC Home Page, https://www.cscglobal.com/cscglobal/home (last visited July 30, 2024).

[24] *See also Symbology Innovations, LLC v. Lego Sys.*, 158 F. Supp. 3d 916, 931 (E.D. Va. 2017); *Johnson v. General Dynamics Info. Tech., Inc.*, 675 F. Supp. 2d 236, 241–42 (D.N.H. 2009).

Second, allegations concerning Mayo Clinic's purported "office(s) or other places of business, including but not limited to" its registered agent, FAC ¶ 14, fail to plausibly allege Mayo Clinic actually has a Utah office or place of business. It is not reasonable to infer that a Minnesota entity that maintains its principal place of business in Minnesota, *id.* ¶¶ 13–14, has an office or place of business in Utah merely because it pays a Utah commercial registered agent. Threadbare allegations fail to "nudge [Plaintiff's] claim[] across the line from conceivable to plausible." *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012) (citation omitted).

Third, that Mayo Clinic is "authori[zed]" to "transact business in [Utah]" via its registration as a foreign corporation, Utah Code § 16-10a-1501(1), is insufficient to establish Mayo Clinic as a NISNPIA "commercial entity." Instead, NISNPIA requires a commercial entity have an actual Utah footprint through "an office or other place of business." *Id.* § 13-37-102(2)(a)(i). Indeed, in another NISNPIA case, the same attorneys representing Plaintiff argued that the individual asserting a NISNPIA claim need not reside in Utah because the statute is meant to protect *all* consumers against misfeasance by *Utah-based* companies. Plaintiffs' Corrected Response to Defendant's Motion to Dismiss at 22, *Curry v. Mrs. Fields Gifts, Inc.*, No. 2:22-cv-651-JNP-DBP, Dkt. No. 54 (arguing NISNPIA applies to a consumer "wherever he or she resides," based on disclosure "by a *Utah-based company*" (emphasis added)).

## CONCLUSION

For the foregoing reasons, the Court should grant Mayo Clinic's Motion and dismiss Plaintiff's FAC in its entirety. Mayo respectfully requests a hearing.

DATED this 31st day of July, 2024.          DORSEY & WHITNEY LLP


By: */s/ Milo Steven Marsden*
Milo Steven Marsden (#4879)
Maryann Bauhs (#17196)
DORSEY & WHITNEY LLP
111 S. Main Street, Suite 2100
Salt Lake City, UT 84111
Telephone:  (801) 933-7360
Facsimile:  (801) 933-7373
marsden.steve@dorsey.com
bauhs.maryann@dorsey.com

Andrew Brantingham (Admitted Pro Hac Vice)
Michael Rowe (Admitted Pro Hac Vice)
Brock Huebner (Admitted Pro Hac Vice)
DORSEY & WHITNEY LLP
50 South 6th Street #1500
Minneapolis, MN 55402
Telephone: (612) 340-2600
Facsimile: (612) 340-2868
brantingham.andrew@dorsey.com
rowe.michael@dorsey.com
huebner.brock@dorsey.com

*Attorneys for Defendant Mayo Foundation for Medical Education and Research*